560 So.2d 115 (1990)
PRIEN OAKS HOMEOWNERS ASSOCIATION, INC. and Prien Lake Development Partnership, Plaintiffs-Appellees,
v.
Kevin E. MOCKLIN, M.D. and Cynthia Scott Mocklin, M.D., Defendants-Appellants.
No. 88-1369.
Court of Appeal of Louisiana, Third Circuit.
April 18, 1990.
*116 Lundy & Dwight, Clayton A. Davis, Lake Charles, for plaintiffs-appellees.
Brame, Bergsted, David B. McCain, Lake Charles, for defendants-appellants.
Before FORET, STOKER and LABORDE, JJ.
FORET, Judge.
This is an action for permanent injunction to enforce certain building restrictions administered by the Prien Oaks Homeowners Association, Inc. and Prien Lake Development Partnership, plaintiffs-appellees herein. After trial, the court found in favor of plaintiffs, enjoining defendants-appellants, Kevin E. Mocklin, M.D. and Cynthia Scott Mocklin, M.D., from constructing a fence line less than forty feet from their waterfront property line. The trial court also enjoined defendants from constructing a fence more than eight feet high from grade on the south property line. Insofar as plaintiffs had already constructed both of the fences complained of, they were ordered to remove and reduce, pursuant to the judgment. Defendants appealed the ruling of the trial court contending that their fencing is in conformity with the subdivision restrictions. We agree and, as such, reverse the judgment of the trial court.

FACTS
The Mocklins purchased Lot 14 in the Prien Oak Subdivision on May 10, 1985.
Article 8, Section 1(A)(27) of the "Act of Dedication and Adoption of Servitudes, Privileges and Restrictions Relative to Prien Oaks" states, in pertinent part:
"As to waterfront lots, no fence shall be placed within forty feet of the waterfront line."
Effective April 13, 1987, almost two years after the Mocklin purchase, Article 8, Section 1(A)(27) was amended to read, in pertinent part:
"Except for Lot No. 11, as to waterfront lots, no fence shall be placed within forty feet of the waterfront line and no fence shall be taller than six feet in height from original ground level without the consent of the Association."
The Association contends that the Mocklins have violated the above restrictions. Although the violations alleged in the petition are numerous, we are only concerned with those which the trial court held were enjoined and which are assigned as error.

ASSIGNMENTS OF ERROR
The Mocklins assign the following as error:
I. The trial court erred in ruling that the Mocklins must relocate their fencing to begin at a point forty feet eastward of the lot's western boundary.
II. The trial court erred in ruling that the Mocklins' fence along the lot's southern border must be lowered to a height of eight feet.

I. SET BACK RESTRICTION
The waterfront is on the western side of the Mocklins' property. The subdivision building restriction, as set forth above, required that no fences be within forty feet of the "waterfront line." The Mocklins built fences on the north and south side of their property to within forty feet of where the water meets the land. The Association contends that the intent of the subdivision building restriction was to limit the construction of fences to within forty feet of the western or waterfront property line rather than the line where the land meets the water, a difference of approximately twenty-three to twenty-seven feet.
The evidence reveals that the Mocklins carefully reviewed the building restrictions prior to purchasing their property. They sought the advice of an attorney as to the intent and interpretation of the building restrictions. Upon their attorney's advice and upon their own understanding of the term "waterfront line," they built the north and south fences to within forty feet of where the land meets the water.
*117 La.C.C. art. 783 states, regarding the interpretation of building restrictions:
"Doubt as to the existence, validity or extent of building restrictions is resolved in favor of the unrestricted use of the immovable."
Restrictive covenants are to be construed strictly. Clark v. Manuel, 463 So.2d 1276 (La.1985). The words of a contract are to be given their generally prevailing meaning. La.C.C. art. 2047; Oakbrook Civic Ass'n., Inc. v. Sonnier, 481 So.2d 1008 (La.1986). Webster's Ninth New Collegiate Dictionary (1984) defines "waterfront" as "land ... fronting or abutting on a body of water" and defines "line" as "a mark (as on a map) recording a boundary, division, or contour."
Black's Law Dictionary (5th Ed.1979) defines waterfront as "land ... fronting on a body of water" and "line" as "a demarcation, border, or limit. The boundary or line of division between two estates."
The trial court, in finding that the term "waterfront line" referred to the property line instead of the demarcation between the land and the water, stated:
"Normally, in the law, in dealing with or in discussing real property, the word line is used synonymously with the intent of property line, the boundary. There is no doubt in the Court's mind that the document did intend to and does restrict a fence to within forty feet of the waterfront property line, and accordingly, the Court would be required [sic] that the fence be removed back to that point."
It is significant that the trial court also stated:
"It certainly would have been better for the person who drafted the instrument to have said the lot line, waterfront lot line, rather than waterfront line, ... it's a question of whether or not it could mislead a layman...."
In accordance with La.C.C. art. 783 and relevant jurisprudence, we find the term "waterfront line" ambiguous and, as such, the extent of the restriction imposed is ambiguous and must be resolved in favor of the least restrictive use of the property. As such, we reverse the holding of the trial court ordering the Mocklins to move their fence back on the north and south boundaries.

FENCE HEIGHT
The trial court ordered the Mocklins to reduce the height of the fence on the south side of their property to eight feet. We find this ruling in error and, as such, reverse.
It is undisputed that there were no fence height restrictions in effect at the time the Mocklins purchased the property and at the time the Mocklins built the fence. In fact, the lack of fence height restrictions was one of the Mocklins' primary considerations in purchasing the property, due to their desire for privacy. The trial court ordered the fence reduced to a height of eight feet on the basis of reasonableness, finding that the fence was out of character and out of keeping with the spirit and/or general plan or scheme of this subdivision.
A plaintiff seeking an injunction to enforce a subdivision restriction must first establish violation of that restriction. Lakeshore Property Owners Ass'n., Inc. v. Delatte, 524 So.2d 126 (La.App. 4 Cir.1988). We do not find that the Association has carried the burden of proving that a restriction was violated under the facts established.
The Louisiana Supreme Court in Oakbrook Civic Ass'n., Inc. v. Sonnier, supra, held that where a committee is granted the power to approve or disapprove of construction based upon a standard of whether it conforms to the harmony of external design and location in the relation to surroundings, such a standard is not ambiguous and is enforceable, provided that the authority is exercised reasonably and in good faith.
We find Sonnier distinguishable from the case at bar. In Sonnier, the committee had the authority to review construction plans, prior to construction. Under the facts presented herein, the Association amended the building restriction to add a fence height restriction where there had *118 been none. The amendment was made effective after the Mocklins' fence was completed.
It is true that subdivision property owners may impose restrictions on the use of land to further a general plan of development. Camelot Citizens Association v. Stevens, 329 So.2d 847 (La.App. 1 Cir.1976), writ denied, 333 So.2d 242 (La. 1976). However, a subdivision property owner may not enforce a building restriction, effective subsequent to the alleged violation, relying upon the contention that the action is out of harmony with the general plan.
In reversing the trial court, we find that the Association has not carried the burden of proving that a building restriction, imposed in furtherance of a general plan of development, has been violated. Additionally, there is no evidence that the action complained of herein rises to the level of a nuisance, whereby plaintiffs might be entitled to injunctive relief.

CONCLUSION
Based on the foregoing, the judgment of the trial court is reversed. Costs of this appeal and at the trial level are to be paid by plaintiffs-appellees, Prien Oaks Homeowners Association, Inc. and Prien Lake Development Partnership.
REVERSED.